JAMES M. JENSEN ET AL., APPELLANTS, V. OMAHA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION, APPELLEE.

66 N. W. 2d 591

Filed November 5, 1954. No. 33603.

278

*William R. Patrick* and *Smith & Smith*, for appellants.

*Fraser, Connolly, Crofoot & Wenstrand,* and *Thomas Marshall*, for appellee.

Heard before. SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The Omaha Public Power District, a public corporation organized under sections 70-601 to 70-672, R. R. S. 1943, and pursuant to section 70-670, R. S. Supp., 1953, instituted proceedings in the county court of Sarpy County to condemn by eminent domain a power-line easement over the lands of James M. Jensen and Marie Jensen located in Sarpy County. These proceedings were brought in accordance with sections 76-701 to 76-724, R. S. Supp., 1953. The Omaha Public Power District will hereafter be referred to as condemner and James M. Jensen and Marie Jensen as condemnees.

The condemner filed its petition in the county court of Sarpy County on August 14, 1953. Thereafter, and in conformity to law, the county judge appointed appraisers. They qualified and, on September 15, 1953, viewed the lands of the condemnees, heard evidence of interested parties, and filed their report awarding damages to the condemnees in the amount of $900.

On September 8, 1953, before the report of the appraisers was filed, the condemnees filed a motion in the county court to strike a part of paragraph No. 6 and all of paragraph No. 8 of the condemner's petition. This motion was made a part of the transcript on appeal to the district court by the condemnees. The transcript on appeal was filed in the district court September 30, 1953. Notice of appeal to the district court was filed on September 21, 1953. On October 23, 1953, argument on the motion was set for hearing in the district court on November 6, 1953, on which date argument on the motion was had. The trial court took the matter under advisement.

The condemner's petition filed in the county court alleged, among other things: "Your petitioner agrees that it will pay to the owners and tenants, as their respective interests may appear, any damages to crops or fences cause by entry upon said premises for the erection operation, and maintenance and repair of said transmission line in the future, if and when such damages occur." On November 20, 1953, the trial court sustained the condemnees' motion, the effect of which was to eliminate the above allegation from the condemner's petition filed in the county court. Whether or not this ruling conformed to Little v. Loup River Public Power Dist., 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355, and the cases cited therein to the effect that a landowner is assured by the Constitution of the state recovery in one action of the whole damage sustained by him because of the taking of his property by

the power of eminent domain need not be discussed or determined in this appeal.

On February 10, 1954, the condemnees obtained leave of the trial court to file their petition on appeal instanter. It appears the request was made when the trial judge was engaged in the trial of a case and during the course of a recess. Being pressed for time, he made notes with reference to the request. On February 11, 1954, the condemnees filed their petition in the district court. The sole issue raised therein was the amount of damages, $900, allowed by the appraisers, which award was alleged to be inadequate and unjust, and constituted a taking without due process of law or just compensation for such easement.

On February 19, 1954, the condemner filed a motion in the district court to vacate and set aside its order of February 10, 1954, granting the condemnees the right to file their petition on appeal out of time, to strike the condemnees' petition as untimely filed, and to dismiss and enter a judgment of nonsuit against the condemnees in this appeal to the district court. On March 19, 1954, the district court heard the motion of condemner and sustained it in its entirety. On March 27, 1954, the condemnees filed a motion to vacate, set aside, and hold for naught the trial court's decision and order of March 19, 1954. On March 29, 1954, judgment was entered vacating the order of the district court dated February 10, 1954, granting the condemnees leave to file a petition in this cause instanter, and striking from the files the petition filed by the condemnees February 11, 1954, dismissing the cause with prejudice, and entering nonsuit against the condemnees.

The principal assignments of error may be summarized as follows: (1) The trial court committed prejudicial error in making and entering its order of March 19, 1954, sustaining the condemner's motion filed February 19, 1954, to strike condemnees' petition filed in the district court and to enter nonsuit against them and

dismiss their appeal. (2) The trial court committed prejudicial error in striking the affidavits of Tom Dooley and Erle B. Brown by sustaining condemner's motion and objections thereto. (3) The trial court committed prejudicial error in overruling the condemnees' motion for vacation of previous orders and for further hearing.

We cite the following as being pertinent to a determination of this appeal: Laws 1951, c. 101, p. 451, an act relating to the acquisition of property through the exercise of eminent domain and to provide a uniform procedure for the condemnation of property for public use; and article 7, Eminent Domain, sections 76-701 to 76-724, R. S. Supp., 1953.

In addition, section 70-670, R. S. Supp., 1953, appearing under article 6, R. S. Supp., 1953, provides in part: "In addition to any other rights and powers hereinabove conferred upon any district organized under sections 70-601 to 70-672, such district shall have and exercise the power of eminent domain * * *. The procedure to condemn property shall be exercised in the manner set forth in sections 76-704 to 76-724."

The following sections of the statutes are also pertinent in this appeal. Section 76-715, R. S. Supp., 1953: "Either condemner or condemnee may appeal from the assessment of damages by the appraisers to the district court of the county where the petition to initiate proceedings was filed. Such appeal shall be taken by filing a notice of appeal with the county judge within thirty days from the date of filing of the report of appraisers as provided in section 76-710." The condemnees properly perfected their appeal from the county court to the district court.

Section 76-717, R. S. Supp., 1953, provides in part: "After docketing of the appeal, the issues shall be made up and tried in the district court in the same manner as an appeal from the county court to the district court in a civil action."

Section 27-1305, R. R. S. 1943, provides that after the

transcript has been filed in the district court: "The plaintiff in the court below shall be the plaintiff in the district court; and the parties shall proceed, in all respects, in the same manner as though the action had been originally instituted in such court."

Section 27-1306, R. R. S. 1943, provides: "In all cases of appeal from the county court or a justice of the peace, the plaintiff in the court below shall, within fifty days from and after the date of the rendition of the judgment in the court below, file his petition as required in civil cases in the district court, and the answer shall be filed and issue joined as in cases commenced in such appellate court."

In City of Seward v. Gruntorad, 158 Neb. 143, 62 N. W. 2d 537, filed February 5, 1954, the foregoing statutes were reviewed, and it was pointed out in the opinion that those statutes provide that the party first appealing to the district court in eminent domain proceedings has the following periods of time to take the following required steps, upon which appeal he becomes the plaintiff in the district court: (a) Within 30 days from the date of the filing of the report of the appraisers, file notice of appeal in the county court; (b) within 30 days from the date of the filing of the notice of appeal, file the county court transcript with the clerk of the district court; and (c) within 50 days from the date of the filing of the notice of appeal, file as plaintiff the petition in the district court. With reference to section 27-1306, R. R. S. 1943, quoted above, the court said: "The 50-day provision applies." The court further said: "Accordingly, we hold that the 50-day period for the filing of a petition in the district court on appeal in eminent domain proceedings under Chapter 76, article 7, R. S. Supp., 1953, begins to run with the date of the filing of notice of appeal in the county court."

Section 27-1307, R. R. S. 1943, provides in part: "If the plaintiff in the action before the justice shall appeal from any judgment rendered against such plaintiff, and

after having filed his transcript and caused such appeal to be docketed according to the provisions of this article, shall fail to file his petition within fifty days from the date of the rendition of such judgment by the justice, unless the court, on good cause shown, shall otherwise order, or otherwise neglect to prosecute to final judgment, the plaintiff shall become nonsuited; * * *."

It is well established, in an action of this kind, the function of the county court is as described in Higgins v. Loup River Public Power Dist., 157 Neb. 652, 61 N. W. 2d 213, as follows: "The procedure in the county court contemplates an informal hearing by the appraisers, a view of the lands, no record of the testimony, and a report of damages assessed to be filed subject only to the right of appeal, not to confirmation by the appointing court. * * * On appeal to the district court from the appraisement of damages, if other issues than the question of damages are involved, they must be presented by proper pleadings." See, also, Scheer v. Kansas-Nebraska Natural Gas Co., 158 Neb. 668, 64 N. W. 2d 333.

The securing of an appraisal of damages by appraisers appointed by the county judge is an administrative act as distinguished from a judicial proceeding. The method of appeal is procedural only and contemplates a complete new trial upon pleadings to be filed as in the case of an appeal from the county court. The present appeal statute contemplates the filing of pleadings and the framing of issues for the first time in the judicial proceedings in the district court. See Scheer v. Kansas-Nebraska Natural Gas Co., *supra.*

The motion of the condemnees filed in the county court was, under the authorities above cited, an improper pleading in the district court. It was merely a part of the administrative proceedings in the county court. The eminent domain act and its procedure contain no requirement that the condemner, who was not the first party appealing, file any pleading to the merits before the appealing condemnees file their petition in the district

court. The condemner, by its motion to strike the petition of the condemnees, dismiss the appeal, and nonsuit them, required the condemnees to show good cause why they should have been permitted, upon request, to file a petition out of time.

Apparently the condemnees' counsel became aware of this court's opinion in the case of City of Seward v. Gruntorad, *supra,* and sought to follow the procedure set forth therein applying to eminent domain. The condemnees' counsel takes the position that where damages constitute the only issue in a condemnation proceeding no petition need be filed in the district court. Cases are cited to sustain the condemnees' position in such respect. However, the cited cases are prior to our decision in City of Seward v. Gruntorad, *supra,* and the condemnees' position is in direct conflict with what this court said in City of Seward v. Gruntorad, *supra,* on procedure in eminent domain cases.

The condemnees quote from Scheer v. Kansas-Nebraska Natural Gas Co., *supra,* as follows: "It is a fundamental rule in this state that if new issues other than the assessment of damages are to be raised on appeal in a condemnation proceeding, they must be pleaded." The quotation simply says in effect that if the appealing party wishes to raise new issues in the district court, he must incorporate the new issues in his district court petition along with, and in addition to, the issues of the assessment of damages contained in his petition, and it does not say that no petition at all need be filed to raise the damage issue. In addition, it was stipulated in that case that it would be tried on the pleadings filed in the county court. This case does not support the condemnees' contention.

The showing of good cause made by the condemnees consists of testimony given by their counsel, together with an affidavit to the effect that by virtue of advanced age condemnees' counsel and his wife suffered from certain physical infirmities; and that their counsel had

handled this type of cases for a number of years and was of the opinion that the law did not require the filing of a petition in the district court when the only issue on appeal was that of damages. The testimony is to the effect that condemnees' counsel was engaged in numerous legal matters and too busy to file this petition; and that he had never filed such a petition.

Between the date of the judgment nonsuiting the condemnees and the date of the hearing of condemnees' motion to vacate that judgment, the condemnees filed the affidavits of Tom Dooley and Erle B. Brown, fixing the amount of damages to the condemnees' land by virtue of condemner's acquiring an easement thereof, in the amounts of $8,500 and $8,700, respectively. These affidavits were filed on March 31, 1954, and April 1, 1954. The trial court sustained a motion of the condemner to strike the affidavits from the files and objection to the introduction of the same into evidence. The condemnees predicate error upon the part of the trial court in sustaining the condemner's motion.

These affidavits were not a part of the hearing held to determine whether or not good cause was shown on the part of the condemnees to file their petition instanter, therefore they were not considered with reference to the merits at that hearing. The legal propriety of considering the affidavits was a matter within the discretion of the trial court, and its refusal to consider them as proper matters of evidence in the cause was a proper exercise of its discretion. We conclude that the condemnees' assignment of error is without merit.

In City of Seward v. Gruntorad, *supra,* we referred to In re Estate of Myers, 152 Neb. 165, 40 N. W. 2d 536, where we held: "A discretionary duty is imposed upon a district court to determine whether or not good cause has been shown for the failure of a party to plead within the time required, and after the court has heard the reasons of the party in default for his failure to timely plead, and in the exercise of a legal discretion has de-

cided that no sufficient cause has been shown, this court will not ordinarily disturb the decision of the district court." See, also, In re Estate of Lindekugel, 148 Neb. 271, 27 N. W. 2d 169.

It appears from the record that the trial court gave the condemnees further opportunity to present any reason or cause why their petition was filed out of time, and to show why it was necessary to delay 93 days after the 50-day period before attempting to file their petition if they so desired, which the condemnees declined to take. The trial court declared that the reasons shown by the condemnees for failure to file their petition in time were identical with the case of City of Seward v. Gruntorad, *supra,* and that under the precedent of such case confusion, doubt, uncertainty, or contrary opinion of counsel as to the legal procedural requirements were not sufficient to permit the filing of a petition out of time.

The law governing procedure in cases of eminent domain became effective May 21, 1951. Counsel for the condemnees should at least be required to take cognizance of the procedure as set forth therein and not ignore it. The mere fact that this court determined the matter of procedure in eminent domain cases in City of Seward v. Gruntorad, *supra,* which opinion was released on February 5, 1954, does not constitute a legal excuse or reason for failure of condemnees' counsel to follow the law relating to procedure in eminent domain cases.

In furtherance of the contention of the condemnees that good cause was shown, condemnees assert that the condemner participated in the argument in the district court on the motion heretofore mentioned, and, having sat by and seen such motion considered and taken under advisement by the trial court, the trial court deeming the same of sufficient importance to take the matter under advisement, and the condemner making no objection that the motion had been filed in the county court, the defect, if any, had been waived, and the condemner was

estopped to assume any inconsistent position with that taken by it in the district court on the hearing on the motion.

We have examined the cases cited by the condemnees on this proposition, such as Neitzel v. Lyons, 48 Neb. 892, 67 N. W. 867, wherein this court held: "Where a stranger filed a motion in a pending case in the district court showing that he was directly interested in the subject-matter of the litigation, and a hearing of this motion was had without any objection that such motion was not presented by a party to the action, held, on error proceedings to review the ruling made on such motion, that the parties who resisted the motion solely on its merits thereby waived all rights of objection to such motion not being originally presented by a proper party."

Also, the case of Peterson v. Strayer, 121 Neb. 587, 237 N. W. 667, wherein this court held: " 'A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings, and has succeeded in maintaining that position, is estopped to assume a position inconsistent therewith to the prejudice of the adverse party.' " See, also, 31 C. J. S., Estoppel, § 117, p. 372; 60 C. J. S., Motions and Orders, § 12, p. 15.

The rule seems to be: "Subject to modifications and limitations which will appear, it is a well established principle that a party who has knowingly and deliberately assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party. Estoppel on this ground cannot be invoked, however, where the position first assumed was taken as a result of ignorance or mistake, or through the act or fault of the party claiming the estoppel; and, clearly, it cannot be invoked where the position complained of is not inconsistent with a former position. Ordinarily, a change of position with respect to a pure matter of law does not work an estoppel, particularly where the earlier position has been found unsound or untenable." 31 C. J. S., Estoppel, § 117,

p. 372. See, also, Hamilton Web Co. v. Page, 8 F. Supp. 626, which held that a party is not estopped from setting up a defense where the necessity for the claim of estoppel in order to prevail arises from errors of judgment of law on the part of one seeking to claim the benefit of estoppel.

Peterson v. Strayer, *supra,* is not factually in point. It involved an independent lawsuit having been brought after an earlier action had been tried and appealed to the Supreme Court, the earlier and later action having been based upon the same general transaction. The case considers the right of a party to an earlier action taking a position on the merits in the later action inconsistent with the position he took in the earlier case. Conceding the correctness of the rule stated in Peterson v. Strayer, *supra,* it is not applicable to the case at bar.

It will be observed that the estoppel claimed by the condemnees arises from errors of judgment of law on their part, that is, the condemnees misjudged the proper procedure in cases of eminent domain with reference to filing the petition in the district court as heretofore set out. The condemner did not assume two different positions in this case, nor did the condemner succeed in maintaining a particular position in another judicial proceeding involving the condemnees and the merits of their claims. Nor did the condemner succeed in maintaining any position taken on the merits before its motion for nonsuit. The condemner in the instant case never successfully assailed any proceeding in the district court as being unauthorized by law and wholly void, and then in turn asserted that such proceedings were in any respect valid. We conclude that the condemnees' contention cannot be sustained.

The condemnees also take the position that good cause was shown by the very fact that they were given leave to file the petition instanter in the district court. Myers v. Hall County, 130 Neb. 13, 263 N. W. 486, is cited. In that case the plaintiff filed a claim against the county

for damages. The county board disallowed the claim. The plaintiff appealed to the district court and recovered a judgment. The county appealed to the Supreme Court and contended the district court·erred in overruling the motion of the county to strike the petition from the files, and in failing to enter a nonsuit for the reason that the record did not disclose good cause for the failure of the plaintiff to file its petition within the statutory period. The Supreme Court affirmed the judgment of the district court, holding: "Where the district court, on appeal by plaintiff from the county board, overrules a motion by defendant to strike the petition on appeal from the record and to enter a nonsuit, because the petition was not filed within the statutory period of 50 days, nor good cause for the delay shown, it will be presumed on appeal to the supreme court that good cause was shown, in absence of a record disclosing the˙contrary." The record contained no bill of exceptions showing proceedings had upon the hearing to strike the petition of plaintiff from· the files and enter a nonsuit. The case is clearly distinguishable from the case at bar in which there is a record of the proceedings with reference to whether or not good cause was shown by the condemnees to file their petition instanter. This record discloses that at the time the request was made by the condemnees to file their petition instanter, there was no attempt whatever to show any cause to the trial court as to why the petition should be filed out of time, nor was there any attempt made to notify opposing counsel that such a request was being made. So, there was no hearing on the matter of good cause to present and file a petition out of time. The hearing was not had until such time as the condemner filed its motion to strike the petition and nonsuit the condemnees. It is obvious that Myers v. Hall County, *supra*, is not applicable to the case at bar. We conclude that the trial court did not abuse its sound judicial discretion in sustaining the condemner's

motion to strike the petition of the condemnees, dismiss their appeal, and nonsuit them.

The condemnees contend that section 76-717, R. S. Supp., 1953, insofar as it provides: "The proceeding shall be docketed in the district court, showing the party first appealing as the plaintiff and the other party as the defendant" is unconstitutional and void.

Article III, section 14, of the Constitution of Nebraska, provides in part: "And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed."

Section 25-101, R. R. S. 1943, provides: "The distinctions between actions at law and suits in equity, and the form of all such actions and suits heretofore existing, are abolished; and in their place there shall be hereafter but one form of action, which shall be called a 'civil action.'"

Section 25-102, R. R. S. 1943, provides: "In all civil actions, the complaining party shall be known as the plaintiff and the adverse party as the defendant."

The condemnees contend that a condemnation proceeding is a civil action within the concept of section 25-101, R. R. S. 1943; that section 76-717, R. S. Supp., 1953, says in substance that the appeal should be docketed showing the first party appealing as the plaintiff, whereas section 25-102, R. R. S. 1943, states that the complaining party shall be known as the plaintiff; that in the instant case the condemnees were not suing to have their property condemned by the condemner, therefore, the condemner is the party complaining; and that this is true because the condemnees cannot agree with the condemner as alleged in paragraph No. 4 of the condemner's petition filed in the county court. See, also, section 76-704, R. S. Supp., 1953, to the effect that if any condemnee shall fail to agree with the condemner with respect to the acquisition of property sought by the condemner, a petition to condemn the property may

be filed by the condemner in the county court of the county where the property or some part thereof is situated.

We are not in accord with the condemnees' contention that section 76-717, R. S. Supp., 1953, by its terms amends statutes setting forth the pre-existing procedure controlling appeals to the district court from the county court and justice court. The act sets up a complete, independent, uniform eminent domain procedure. After designating the party first appealing as plaintiff in eminent domain appeals, the act then adopts justice court appellate procedure. A statute may adopt the provisions of another without being an amendment thereof and without, therefore, having to comply with the provisions of Article III, section 14, of the Constitution relating to amendments. See, Adams v. State, 138 Neb. 613, 294 N. W. 396; In re Estate of Mathews, 125 Neb. 737, 252 N. W. 210.

In Beisner v. Cochran, 138 Neb. 445, 293 N. W. 289, this court said: "An act complete in itself which covers the whole subject to which it relates may properly modify, change or destroy the effect of other statutes without contravening the provisions of the Constitution. Van Horn v. State, 46 Neb. 62, 64 N. W. 365; Mehrens v. Bauman, 120 Neb. 110, 231 N. W. 701; State v. Hevelone, 92 Neb. 748, 139 N. W. 636; Scott v. Dohrse, 130 Neb. 847, 266 N. W. 709." The court further held: "Where a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, it is the duty of a court to adopt the construction which, without doing violence to the fair meaning of the statute, will render it valid."

We conclude that the condemnees' position that section 76-717, R. S. Supp., 1953, is unconstitutional and void cannot be sustained.

The principal assignments of error contended for by the condemnees have been determined. Other assign-

ments of error, in view of our conclusions, need not be determined.

For the reasons given herein, the judgment of the trial court is affirmed.

AFFIRMED.